IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MATTHEW DOTSON<br>32147 Hamilton Court, Suite 105<br>Solon, Ohio 44139<br><br>              Plaintiff,<br><br>            v.<br><br>SEDGWICK CLAIMS MANAGEMENT<br>SERVICES, INC.<br>5700 Lombardo Center<br>Seven Hills, Ohio 44131<br><br>    **Serve also:**<br>    Sedgwick Claims Management<br>    Services, Inc.<br>    c/o Corporate Service Company<br>    50 West Broad Street, Suite 1330<br>    Columbus, Ohio 43215<br><br>            Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CASE NO.<br><br>JUDGE:<br><br><br><br>**COMPLAINT FOR DAMAGES<br>AND REINSTATEMENT**<br><br>**JURY DEMAND ENDORSED<br>HEREIN** |

Plaintiff, Matthew Dotson, by and through undersigned counsel, as his Complaint against the Defendant, states and avers the following:

### PARTIES

1. Dotson is a resident of the city of Solon, county of Cuyahoga, state of Ohio.

2. Sedgwick Claims Management Services, Inc. ("Sedgwick") is a foreign corporation that operated a business located at 5700 Lombardo Center, Seven Hills, Ohio 44131.

### JURISDICTION & VENUE

3. This Court had federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1331 as Dotson's is alleging federal law claims under 29 U.S.C. § 2601 *et seq.*, Family and Medical Leave Act, ("FMLA").



4. This Court has personal jurisdiction over Sedwick because it is a Limited Liability Company that is registered to conduct business in this District, and at all times material to the allegations contained herein, each conducted substantial business in this District and had sufficient minimum contacts within this District.

5. All material events alleged in this Complaint occurred in Cuyahoga County.

6. Venue is properly placed in the United States District Court for the Northern District of Ohio, Eastern Division, pursuant to 28 U.S.C.§ 1391, because it is the district court of the district, division, and county within which Defendant operated and where a substantial part of the events or omissions giving rise to the claim occurred.

## FACTS

7. Dotson is a former employee of Sedgwick

8. Dotson began working for Sedgwick on or around January 4, 2016.

9. Sedgwick employed Dotson as a claims adjuster.

10. Dotson had a strong history of performance with Sedgwick.

11. Dotson consistently received pay raises.

12. Dotson did not have any history of meaningful discipline.

13. Dotson's mother suffered from heart conditions that required her to be hospitalized overnight at times.

14. Dotson's mother suffered from heart conditions that required her that required her to have stents surgically implanted.

15. Dotson's mother suffered from heart conditions that required Dotson to provide care for her on occasion when her condition flared up.

16. Dotson's mother lived with Dotson.

17. Dotson was his mother's primary caregiver.

18. Dotson's mother's serious condition required Dotson to step in and help for a few days every few months.

19. When Dotson needed to help his mother with her serious medical condition, he utilized his accrued paid time off provided from Sedgwick.

20. Although Dotson was well under his accrued paid time off, Sedgwick told him that he missed six unscheduled days in a six-month period, resulting in an attendance policy violation.

21. Sedgwick is subject to the provisions of the FMLA.

22. Dotson qualified for protected leave under the FMLA.

23. As of January 29, 2019, Dotson worked for Sedgwick for at least 12 months.

24. As of January 29, 2019, Dotson had at least 1,250 hours of service for Sedgwick during the previous 12 months.

25. On or around January 25, 2019, Dotson's mother was hospitalized due to her serious medical condition.

26. On or around January 29, 2019, Dotson applied for leave under the FMLA by calling Sedgwick's human resources department ("First FMLA Request").

27. Sedgwick denied Dotson's First FMLA Request.

28. On or around February 26, 2019, Dotson applied for intermittent FMLA by submitting a request via email to Sedgwick's human resources department ("Second FMLA Request").

29. On or around March 15, 2019, Dotson received the approval letter for the Second FMLA Request.

30. Dotson was approved for intermittent FMLA leave on March 15, 2019.

31. On or around March 18, 2019, Sedgwick terminated Dotson's employment.

32. Sedgwick claimed that Dotson's employment was terminated as a result of a reduction in force.

33. Immediately after Dotson's termination, Sedgwick began looking for a replacement for Dotson.

34. Sedgwick's rationale for terminating Dotson's employment was pretextual.

35. Sedgwick terminated Dotson's employment in retaliation for applying for FMLA leave.

36. Upon information and belief, Defendants have a progressive disciplinary policy ("Progressive Discipline Policy").

37. Defendants have used Progressive Discipline Policy when disciplining employees who have not applied for FMLA leave.

38. Under Progressive Discipline Policy, Dotson had not received any meaningful discipline.

39. Under Progressive Discipline Policy, Dotson had not received any written warnings.

40. Under Progressive Discipline Policy, Dotson had not been suspended.

41. Defendants skipped steps under the Progressive Discipline Policy when they terminated Dotson's employment.

42. Skipping steps under the Progressive Discipline Policy is an adverse employment action.

43. Skipping steps under the Progressive Discipline Policy is an adverse action.

44. Defendants intentionally skipped steps under the Progressive Discipline Policy when they terminated Dotson's employment.

45. Defendants willfully made the decision to skip steps under the Progressive Discipline Policy when they terminated Dotson's employment.

46. Terminating Dotson's employment was an adverse employment action.

47. Terminating Dotson's employment was an adverse action.

48. Defendants intentionally terminated Dotson's employment.

49. Defendants willfully made the decision to terminate Dotson's employment.

50. Defendants terminated Dotson's employment in violation of the Progressive Discipline Policy in retaliation for applying for FMLA leave.

### **COUNT I: UNLAWFUL INTERFERENCE WITH FMLA RIGHTS**

1. Dotson restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

2. Pursuant to 29 U.S.C. § 2601 *et seq.*, covered employers are required to provide employees job-protected unpaid leave for qualified medical and family situations.

3. Sedgwick is a covered employer under the FMLA.

4. During his employment, Dotson qualified for FMLA leave.

5. On or around March 15, 2019, Dotson was approved for intermittent FMLA.

6. Dotson intended to utilize his intermittent FMLA to provide care for his mother's severe health conditions.

7. On or around March 18, 2019, Sedgwick terminated Dotson's employment.

8. Sedgwick interfered with Dotson's ability to utilize his approved intermittent FMLA leave when it terminated his employment.

9. Sedgwick unlawfully interfered with Dotson's exercise of his rights under the FMLA in violation of Section 105 of the FMLA and section 825.220 of the FMLA regulations.

10. Sedgwick violated section 825.300(c)(1) of the FMLA and interfered with Dotson's FMLA rights when Sedgwick did not honor Dotson's approved use of FMLA leave.

11. As a direct and proximate result of Sedgwick's conduct, Dotson is entitled to all damages provided for in 29 U.S.C. § 2617, including liquidated damages, costs and reasonable attorneys' fees

## COUNT I: RETALIATION IN VIOLATION OF THE FMLA

12. Dotson restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

13. During his employment, Dotson qualified for FMLA leave.

14. During his employment, Dotson applied for FMLA leave.

15. After Dotson was approved for qualified FMLA leave, Sedgwick retaliated against him.

16. Sedgwick retaliated against Dotson by terminating his employment.

17. Sedgwick willfully retaliated against Dotson in violation of U.S.C. § 2615(a).

18. As a direct and proximate result of Sedgwick's wrongful conduct, Dotson is entitled to all damages provided for in 29 U.S.C. § 2617, including liquidated damages, costs, and reasonable attorneys' fees.

## DEMAND FOR RELIEF

WHEREFORE, Dotson demands from Defendant the following:

(a) Issue an order requiring Defendant to restore Dotson to one of the positions to which he was entitled by virtue of his application and qualifications, and expunge his personnel file of all negative documentation;

(b) An award against each Defendant of compensatory and monetary damages to compensate Dotson for lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(c) An award of punitive damages against each Defendant in an amount in excess of $25,000;

(d) An award of reasonable attorneys' fees and non-taxable costs for Dotson claims as allowable under law;

(e) An award of the taxable costs of this action; and

(f) An award of such other relief as this Court may deem necessary and proper.

          Respectfully submitted,

          /s/ *Daniel S. Dubow*
          Brian D. Spitz (0068816)
          Daniel S. Dubow (0095530)
          **THE SPITZ LAW FIRM, LLC**
          25200 Chagrin Boulevard, Suite 200
          Beachwood, OH 44122
          Phone: (216) 291-4744
          Fax:   (216) 291-5744
          Email:  brian.spitz@spitzlawfirm.com
                   daniel.dubow@spitzlawfirm.com

          *Attorneys For Plaintiff*

## JURY DEMAND

Plaintiff (Matthew Dotson) demands a trial by jury by the maximum number of jurors permitted.

                                              /s/ *Daniel S. Dubow*
                                              Brian D. Spitz (0068816)
                                              Daniel S. Dubow (0095530)
                                              **THE SPITZ LAW FIRM, LLC**